The next case will be 091493, Honda of America v. United States. Mr. Page. Good morning, your honors. May it please the court. My name is Jeremy Page and I'm the attorney for the appellant in this action, Honda of America Manufacturing, which we'll most likely refer to as HAND throughout. It's sort of their internal name for the designation of that entity. The question before the court today regards a specific item called the oil bolt, which is specially designed for use solely by Honda in their automobiles and motorcycles in either a transmission or a braking application, as opposed to the decision by the court below to render these items as screws under a different classification or the tariff schedule. Well, it strikes me that you're making two different arguments, which sometimes gets in the way. One of them is that it's a specialized bolt for use in Honda automobiles and that, therefore, it's not a general use part and shouldn't come within the screws and bolts. That seems to me a bit questionable, given the suggestion that radiator parts that fall under another heading would not come under the parts heading, but put that aside for the moment. As I understand it, there's a second argument relating to functionality, and you're saying that the functionality of these bolts is only incidentally or partially a fastening function and that the main function is something else. Yes, I do, Your Honor, and I do think that's the crux of the issue, is functionality. Really, that is where we think, if you'll excuse me for being colloquial, we'll drive ourselves out of the notion that this is a part of general use or a screw. There is guidance, both in rulings of custom position previously and in the notes in the tariff schedule about articles that are intended solely or principally for use in a certain context. These items are specially designed. They have very unique physical characteristics. I know, as part of the record, we had sent up samples, and there are also pictorial representations in our principled rules. Is there a case law telling you what to do with the functionality criterion? Do you interpret that as meaning that has to be the primary criterion? What are the rules? I don't think there's any case law that has specifically addressed that aspect previously. What we see is there are rulings that Customs has issued. But it wouldn't necessarily be with respect to bolts and screws, but maybe other items within the custom schedule. Is there no functionality law? No. I mean, it's really the interpretation of the language in the statutes. There was testimony through the deposition process of a former National Import Specialist how they looked at special engineering, things that were not off-the-shelf applications, that were used in a specific context or application, and even specifically in an automotive context, which drove the decision process that it was not a part of general use. It was a part specific to an automotive function or application. And that really is an interpretation, as Customs has said in their own deposition and their own representation of the briefs, of how you interpret the tariff itself. But facially, the definition of under 7318 doesn't have a functional component. It just talks about threaded articles with a certain diameter, with a hexagonal head, etc. And isn't that a problem for you? Because if it falls under that definition as a part of general use, even though I think you quite clearly pointed out that this bolt is seemingly far from a part of general use, you're stuck under that heading, and therefore precluded from arguing that it falls under any of the headings in Chapter 87. Well, we think that's where the trial court erred, because that is where they did stop their analysis, and we don't believe that construction of the tariff stops at that point. That is the argument the government is positive. If it meets the definition, we're done. It's a one-fold analysis. We don't believe it's a one-fold analysis. We believe that the language of Note 3 in Section 17, the examples produced of rulings previously where customs has looked specifically to functionality. They've taken items, there's a ruling on a washer, on a knob, on a brake cable, where those were ostensibly parts of general use. Prima facie, to use the language of the government, would have met that eonominy designation. And yet, customs went beyond and looked at the exact function. They looked at the washer did not function as a washer. But it was determined that that was not a washer that met the definition. Well, we would disagree. If you read the explanatory language, as we cited in our brief, it specifically references conical-shaped washers as being a washer. That is right in the language of the explanatory notes. And yet, the National Import Specialist deigned that that was not because how it functioned. And yet, even in the ruling, that the issue had a picture, a pictorial representation of a conical-shaped washer. Your problem here is that if there is a functionality requirement, this item seems to satisfy it because one of the three functions that it performs is a fastening function. But we believe that's the key distinction. It's one of the three functions. And whether the principal function, which we believe is to permit the flow of fluid, because that is what creates the unique design characteristics, the reason for the cross-sectional holes, the forged shaft, and for the transmission-oriented ones, a lengthy extended stem for direct placement of fluid, that is a very specific, unique function that would not be required for a fastener. And also, throughout both the testimonies acknowledged by Cathy Campanelli, one of the National Import Specialists, oversight of the fastening area, Chapter 7318, and Ham's own expert witness, there was acknowledgement that if this were just a bolt with no holes bored, no extended forged open shaft, then it would not function in the capacity in which it is designed and expected to function. And a vehicle would break down. The transmission would not break. You wouldn't use an item like that in this application. And that's the difference. That's why this is not a fastener. Because a fastener would only fasten. That is the nature of the beast. And you made a comment, I know, to the earlier argument about specialized bolts for radiators or specialized springs, but we believe those are clearly distinguishable because those were functioning as bolts or as springs. Period. That's the designation. 7318 is about fasteners. Our item, again, functions and weighs well beyond what a fastener would function as. We also, it's interesting to note, as we look through kind of the history of this whole process, the government has further and further narrowed its argument, to Ron's reference before, to definitional issues. In the earliest iteration of the government's rulings, they focused that this primary function was as a fastener. They moved away from that with the reconsideration to it's now a significantly more significant function. It is no longer the primary. When we move to the trial court, it's all about the definition as a fastener. And when we finally get to the government's brief, to the red brief, at this level, the appellate level, there's not even any mention of the other functions. It's solely focusing on the fastener function, as if that is all that this is about. And that is the fundamental flaw in the government's case. That is the fundamental flaw in the trial decision, is that this is not a fastener. This is a part to an automotive function, either transmission or brake, or for a motorcycle application, a brake application. It does function as a fastener, albeit a fastener to fasten the banjo connection and provide the oil flow and all of that. So I don't think it's accurate to say it doesn't. These are not fasteners. They are not normal fasteners, I will grant you that. But they do fasten the oil line to whatever component requires the oil. And we have not denied the fact that it performs a fastening function. But then the question becomes whether the requirement is that it be solely a fastener or only partially, or the point Judge Dike was raising about which is the dominant function. And what guidance is there? What precedent is there to guide the decision with respect to this function aspect? Again, to us the guidance is either the language from Section 17 about something that is solely or principally for use in a particular application. We would submit that these are not the types of items that would be used as a fastener for a fastening function alone. Certainly the extended stem versions, and we brought the samples, but if you would like we're welcome to take them out and show them to you. But certainly the extended stem version, practically speaking, and that is a word that even the National Import Specialist used, that a washer would not have a practical use as a washer, the one in the Porsche ruling that they cited to. Those would not have a practical use as a fastener. It's illogical. I mean they really are designed solely for a particular purpose. And it's not just a purpose. It's designed for a specific placement of transmission fluid. They're precise measurements. There are different borings. There are different lengths of extended stems. There are different dimensional tolerances. There are different treatments on the under head of what they call a concentric lay to ensure a very tight seal because obviously the leakage of any fluid would be very deleterious to the safe operation of the vehicle, whether it be an automobile or motorcycle. And to us that's the difference. These extend well beyond what a fastener would do. They are functioning in a very different methodology for a very different application. Would you like to save your rebuttal time? That would be fine. Thank you. All right. Mr. Kinney. Good morning, Your Honors. Edward Kinney from the Department of Justice for the Government. The lower court was correct here in finding that the Honda's oil bolts are, as their name suggests, other screws and bolts under subheading 7318.15.80 of the HTSUS. Well, let's assume that there's a functionality feature of this, that they have to perform a fastening function. That's what the court in Rocknell seemed to say. How do we know, as Judge Flynn and I have been asking you, whether that's got to be a sole function, a primary function, one function, a function that's not incidental? And what's the standard? Is there any authority about that? Well, Your Honor, I think as the lower court did under GRI 1, going through the GRIs, first through GRI 1, seeing if it comes under the subheadings and the chapter notes. And I think as opposed with JVC Company of America 234.3.1348, the Federal Circuit was discussing the more than doctrine and whether that's now been supplanted by the general rules. And that case stated that it was subordinated to the general rules, and now we go by the general rules. So whether these oil bolts, which are specialized, whether they have additional features or other features, it's not that more than doctrine anymore. We're going to the GRIs. Does it make any difference at all, the fact that these bolts have this quite specialized functionality? Well, Your Honor, the... I mean, is a bolt is a bolt is a bolt kind of thing, regardless of what else it might do? Well, Your Honor, it's a very highly specialized bolt. We would agree that this is a specialized bolt. But that does not preclude it from being in the bolt category. But I think, as your opposing counsel, Mr. Page, mentioned a moment ago, isn't this somewhat akin to the Portia case with the conical washer? That is a practical matter. That conical washer really doesn't function as a washer. It's a specialized sort of thing. And as a practical matter here, you certainly wouldn't use these bolts if you were just trying to connect two things together. They're specialized bolts. They're undoubtedly dimensionally unusual in some respects and with special manufacturing, et cetera, et cetera. Your Honor, the headquarters ruling regarding the washer, that ruling cites the definition that they're saying is a flat, a round, flat object that protects a part. And they concluded in that case it didn't, and therefore it seems that they didn't state that it was a part of general use. I'm not saying that all of the headquarters rulings are perhaps the most authoritative. However, and I might take issue with that one. However, the rulings regarding oil bolts are consistent in that they always hold the oil bolts. Even though they have some other function, they still meet the criteria of a screw according to 7.318. But suppose we were to conclude, or the Court of National Trade were to conclude, as a factual matter, that the dominant function here was lubrication and the fastening was only an incidental function. Does it still come within the screw and bolt heading? Your Honor, I believe that it meets, that it's primarily meeting the screw and bolt function. Any aspect of it, no matter how incidental, does it perform some fastening function, no matter how incidental to its primary function? And it meets the other criteria of a fastener. If it can meet the definition of a screw and it does additional things, it's still a screw. It's specialized. The ENs, which are the interpretations of the hardware... Even though its dominant purpose or almost exclusive purpose is something else, as long as, even incidentally, it performs a fastening function, that's enough? Well, Your Honor, I would... I mean, is that your position? Well, I would submit that even if we considered these to be... No, no, but is that your position? It will not be, not cognitively, in the provision of screw. Is the answer yes, that it would be within the bolt? It would be in the bolt and screw category. It would be a... Specifically in this case, these bolts, admittedly, with... We've quoted under the statement of facts that were submitted in the underlying case that are in the record. It meets the criteria, both of the ENs to 731A and also to the rock mount. This meets a screw, the category of screw. And because it meets that, it is a part of general use, according to the section notes for Chapter 15, Section 2. And because of that, even if we do consider the auto parts category, if we were doing a Rule 3 analysis, it would be precluded from the auto parts category because the section notes for Chapter 17 include parts of general use. So even if we do that, it's still precluded. As I said, the rulings on oil bolts have been consistent from customs. The underlying rulings here, 966412 and 966789, were particularly thorough, informal, and are due a deference. We would submit due deference under state warrant need as the lower court did hold. For these reasons, we would state that the lower court did correct. If you have any more questions, Your Honor, that would be correct. All right. Thank you. Mr. Page. Yes, Your Honor. May it please the Court. What we believe the government's just shown is how myopic their approach is. I mean, it's definition-driven definition alone. And it's interesting that they cite the GRI-1 because the other rulings, the Walsh ruling, the Knob ruling, the other rulings we cited too, those were GRI-1 analyses as well. They didn't resort to any other principle than GRI-1. The government talks about heading 7318 versus heading 8708. Again, it's a GRI-1 analysis. If we want to resort to GRI-3 and we go through the iterations of GRI-3A, 3B, 3C, we find ourselves in either a question of what's most specific, what's the essential character, or what's the last in order. Well, if we talk about that analysis, we still get to the point where what is most specific? Thus, that functionality drives what's most specific. It's specific in that application. It's not practical to use that as a fastener. What is the essential character? These unique design elements, the unique way in which it's manufactured, engineered over decades to Honda-specific standards, which, by the way, are not interchangeable with any other vehicle. These are unique to Honda. They would not be used, and other manufacturers don't even use oil bolts. They use other methodologies to perform this same type of a function. Or if we go to GRI-3C, last in order, we would still be at 8708. The statement by counsel for government is that, well, you can't apply that under Section 17 because it's a part of general use. Therefore, it's excluded. But that's circular. I mean, if we say it's a part of general use, then we're never here to begin with. So that can't be the defense as to why you don't apply GRI-3. Instead, it has to be the combined two-part analysis we talked about. Do we punitively potentially meet part of general use? Maybe on a superficial level because it performs a fastening function, because it meets some physical parameters, albeit only some. However, we still need to ask the question, how is it used? What is its silver principle use? What is the essential character provision? Where's that quote? Under GRI, well, 3B talks about— Where is it? I'm sorry. Well, we go through the iterations in our— What page? I want to read what it says. Oh, I'm sorry. Excuse me. That would make sense. It was at the last argument that we made toward the end of the brief where we walked through, I think on page 46 of our brief, 45 and 46, we talked about essential character. And then we can walk through to 47 to the GRI-3C, the last in order, the last resort approach to looking at that question. I guess I would also note the government's reference to the boil vote rulings and the consistency of customs in terms of ruling on this matter previously. There were two older rulings, which are part of the joint appendix, which were New York rulings, which didn't really go into any analysis other than say, this is the part, this is its physical characteristics, here's the classification. Unfortunately, the records for those two rulings were lost as part of the events of 9-1-1. So there's nothing that either party can turn to for additional guidance and support of the rationale behind those rulings. So we would posit that the persuasive authority is minimal, if anything. As far as the Honda rulings are concerned, as we noted previously, the initial ruling talked about the primary function as a fastener. And again, we do not believe that is its primary function. And the second ruling started to back off of that, talked about it being a significant function. Again, if we're talking about multiple functions, either we're talking about the solely or principally for use in an application, which is a GRI-driven result, or if we're talking about multiple functions that are co-equal, we are then guided by the principles of the GRI-3, which forced us and required us to go through that analysis, again, of functionality, essential character, and if all else fails, what is the last classification order, which would be the Chapter 87 designations requested by Ham in this instance. I believe I'm out of time. Thank you, Your Honor. Thank you. The case is submitted. All rise. The Honorable Court is adjourned until this afternoon at 2 p.m.